IN RE ESTATE OF JOHN MORAN.
MARGARET SCHWARZ ET AL., APPELLANTS, v. THOMAS MORAN
ET AL., APPELLEES.

FILED FEBRUARY 23, 1921.   No. 21278.

Wills: PROBATE: SUIT TO SET ASIDE. In this, a proceeding to set aside
the probate of a will, brought about 14 years after the decree of
probate was rendered, the evidence is examined, and it is *held*
that there was not sufficient proof of undue influence to make a
*prima facie* case, or to justify a refusal of probate on that ac-
count; that concealment and fraud have not been shown sufficient
to justify the opening of the decree; and that the plaintiffs have
been guilty of such laches and delay that they are not entitled to
equitable relief.

APPEAL from the district court for Cuming county:
WILLIAM V. ALLEN, JUDGE. *Affirmed.*

*W. T. Thompson* and *A. R. Oleson,* for appellants.

*P. M. Moodie* and *John J. Gross, contra.*

LETTON, J.

John Moran died at his home in Wisner on March 4,
1904. After due and proper notice by publication, his
will was probated in the county court of Cuming county
on April 14, 1904. He left surviving him a widow, Cath-
erine Moran, two sons, Thomas and John, and four daugh-
ters, Margaret, Mary, Catherine, and Minnie. All of the chil-
dren were of full age, Catherine McGonigal, the oldest
daughter, was 30 years of age and had been married about
10 years; Margaret, the youngest, being 24 years of age at
that time. She married in 1905. Mary married in 1910. The
children all lived in Cuming county. The testator owned
500 acres of land in that county, and a house and lot in Wis-
ner, where he and his wife and the unmarried daughters
had lived since 1901, when they removed to town from the
farm. The Wisner property was left to his widow in fee;
160 acres of the land, which had been farmed by him, was

devised to Thomas. A life estate in the remaining 340 acres was given the widow, with a provision that at her death a life estate in a 160-acre portion of this tract was left to John, with remainder to his children. The remainder to the other 180 acres was devised to Thomas, subject to the payment by him of $1,000 to each of the daughters, within six months after his mother's death. If he failed to pay, the 180-acre tract went to the girls, share and share alike, and, if he died before the mother, the 180 acres went to the daughters. If John died without issue, the 160 devised to him for life also went to the daughters. The widow was named executrix, and she settled the estate.

During the life of the mother, the daughter Minnie died. The widow died in October, 1918. Within six months after her death, Thomas tendered to the surviving daughters the money due them as provided by the will. This they refused to accept. Soon afterwards this action was begun by them on the equity side of the county court to set aside the probate of the will, alleging fraud in procuring the probate, and undue influence. The county court refused to set aside the decree of probate. Error proceedings were taken to the district court, which affirmed the action of the county court, and the case is now here on appeal.

The sole question is whether the facts are sufficient to justify setting aside the decree of probate. There is nothing in the evidence to show any fraudulent concealment of the time and place set for the hearing on the probate of the will. Margaret, now Mrs. Schwarz, testified that before her father's death the mother and Thomas were quarreling over what kind of a will should be made, and the mother asked the daughter if 40 acres was enough for each of the girls, and 160 for each of the boys; that after the will had been made she told them they had 40 acres; that this was at the first part of the father's sickness; that soon after his death the mother was going to West Point to settle up the father's debts, taking Thomas with her; that they asked to go along, and Tom said, "No damn kids will go," and that they were afraid of Thomas on account of his domineering dis-

position, and because of an incident when he had threatened them with a pistol when they lived on the farm several years before. Mary testified that at one time the mother wanted the father to have a will, and that she stayed out of the father's room for three days until he made up his mind to do as she wanted him to, but she does not testify as to what this was.

The evidence of other witnesses tends to prove that, at various times after the death of the father, Mrs. Moran told the girls and others that they were each to get 40 acres of land after her death; that they relied upon these statements, and knew no different until the tender was made by Thomas of the amount due them under the will. The only other evidence with respect to undue induence is that a local banker, who drew the will, had drawn a will the same in all respects as the later one, except that it gave the girls $3,000 apiece instead of $1,000; that Mrs. Moran told the father in his presence that $1,000 apiece was enough for the girls, and that upon this suggestion he was directed by the father to change the amount from $3,000 to $1,000, which he did in the final draft.

The provisions of the will seem unfair to the daughters, but it is not unusual for parents, especially of foreign birth, to desire their land to descend in the male line. There is no proof as to the value of the 180 acres in 1904, so we cannot say how much it was then worth more than the $4,000 which Thomas was obligated to pay if they accepted the devise. The mother is not here to tell her side of the story. She may have been confused by the language of of the will, which provides that in certain contingencies the 180 acres of land would go to the daughters, and also the 160 acres in which John had a life estate. There is nothing to show that the plaintiffs or their husbands were not fully competent in all respects at the time the will was probated, or during the lifetime of Mrs. Moran.

Upon the whole case, we are satisfied, first, that there was not sufficient proof of undue influence to make a *prima facie* case, or to justify a refusal of probate on that ac-

count; second, that concealment and fraud have not been shown to sufficiently justify the opening of the decree; and, third, that the plaintiffs have been guilty of such laches and delay that they are not entitled to equitable relief. No evidence was offered on behalf of the defendants, and we think none was necessary.

AFFIRMED.